IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SHIRLEY PAGE HOLLOMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO. 2:12cv538-CSC |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

## I. Introduction

On March 12, 2009, the plaintiff applied for disability insurance benefits pursuant to

Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*., alleging that she was unable to

work because of a disability. She is seeking disability benefits for a closed period from the

date of onset on October 1, 2003 until the last date she was insured on December 31, 2006.

Her application was denied at the initial administrative level. The plaintiff then requested

and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing,

the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social

Security Act during the closed period from October 1, 2003 until December 31, 2006. The

Appeals Council rejected a subsequent request for review. The ALJ's decision consequently

became the final decision of the Commissioner of Social Security (Commissioner).[1] *See*

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No.
103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social
Security matters were transferred to the Commissioner of Social Security.

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).  Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination[2] the Commissioner employs a five step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).  The court "may not decide the facts anew, reweigh the evidence, or substitute  . . . [its] judgment for that of the [Commissioner]."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must, however,] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

### III.  The Issues

**A. Introduction.**  Shirley Holloman was 44 years old on the date of alleged onset of disability and 51 years old at the time of the hearing before the ALJ.  (R. 37).  She has her general equivalency diploma (GED).  (R. 38).  Holloman's prior work experience includes work as a landfill supervisor, customer relations clerk, scale clerk, and bookkeeper.  (R. 53).  Following the administrative hearing, the ALJ concluded that the plaintiff has severe impairments of "degenerative disc disease of the lumbar spine; chondromalacia of the right hip; neuropathy of the lower extremity; migraine headaches; and chronic obstructive pulmonary disease ("COPD") (20 CFR 404.1520(c))."  (R. 20).  However, the ALJ concluded that the plaintiff did not have impairments that met the criteria of any of the Listings of Impairments set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ also concluded that the plaintiff was unable to perform her past relevant work, but, using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework and relying on the testimony of a vocational expert, she also concluded that there were a significant number of jobs in the national economy that the plaintiff could perform.  (R. 26).  Thus,  the ALJ concluded that Holloman was not disabled because she had the residual functional capacity to perform light work with restrictions.

**B. The Plaintiff's Claims.**  Holloman presents two issues for the Court's review.  As stated by Holloman, the issues are as follows:

I.  The Commissioner's decision should be reversed because the ALJ's finding that Ms. Holloman is capable of performing light work is not supported by substantial evidence.

2.      The Commissioner's decision should be reversed because the ALJ failed to give great weight to the opinion of Ms. Holloman's treating physician, Dr. James Lockwood.

(Doc. # 12, Pl's Br. at 5-6).  It is to these issues that the court now turns.

## IV.  Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work.  *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990).  In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history.  *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983).  The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review.  *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981).  The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added).

**A.  Residual Functional Capacity ("RFC") Assessment**.  Holloman first complains that the ALJ's RFC is not supported by substantial evidence because "the record does not contain any RFC assessments from any treating or examining physicians which support the

ALJ's RFC assessment." (Doc. # 12 at 6).    The ALJ concluded that through the last date

insured, the plaintiff had the residual functional capacity

> to perform light work as defined in 20 CFR 416.1567(b) except the claimant
> is limited to work which will only require the claimant to: stand/walk no more
> than 15 minutes at a time; stand/walk no more than 2 hours (total) during an
> 8 hour workday; never operate foot controls or climb ladders/scaffolds/ropes;
> never work around unprotected heights, dangerous equipment, temperature
> extremes, humidity, wetness, or concentrated environmental pollutants; rarely
> climb stairs/ramps; and rarely bend, stoop, kneel, crouch, and/or crawl.

(R. 21).

An ALJ is required to independently assess a claimant's residual functional capacity

"based upon all of the relevant evidence." 20 CFR § 404.1545(a)(3) ("We will assess your

residual functional capacity based on all of the relevant medical and other evidence."); 20

C.F.R. § 404.1546(c) ("Responsibility for assessing residual functional capacity at the

administrative law judge hearing . . . level.  If your case is at the administrative law judge

hearing level . . ., the administrative law judge . . . is responsible for assessing your residual

functional capacity.") *See also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)

("The residual functional capacity is an assessment, based upon all of the relevant evidence,

of a claimant's remaining ability to do work despite his impairments."). "Residual functional

capacity, or RFC, is a medical assessment of what the claimant can do in a work setting

despite any mental, physical or environmental limitations caused by the claimant's

impairments and related symptoms. 20 C.F.R. § 416.945(a)." *Peeler v. Astrue,* 400 Fed.

Appx. 492, 494 n.2 (11th Cir. 2010).

The plaintiff argues that "the ALJ is required to have evidence from a physician which

supports her RFC assessment given that it is by definition "a medical assessment."" (Doc. # 12 at 7).  In essence, the plaintiff contends that the record must contain a residual functional capacity determination by an examining or treating physician.  However, the plaintiff's argument conflates the nature of residual functional capacity with the responsibility for making the residual functional capacity determination.  The Commissioner's regulations clearly show who is responsible for making the residual functional capacity determination when a case has reached the administrative law judge hearing.

> If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity.

20 CFR § 404.1546.

But that observation does not end the enquiry.  The essential question raised by the plaintiff is whether it is necessary to have a residual functional capacity assessment by a medical provider as part of the evidence which an ALJ must consider in reaching a determination.  In this case, the answer is no.  The ALJ stated that she

> considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and SSRs

96-4p[4] and 96-7p.[5]  I have also considered opinion evidence in accordance
with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p,
and 06-3p.[6]

(R. at 21) (footnotes added).

Although Holloman also complains that the ALJ's RFC is contrary to the RFC offered

by her treating physician, the ALJ was not required to accept her treating physician's RFC.

The ALJ reviewed and considered all the medical evidence in the record in determining

Holloman's RFC.  The court has independently considered the record as a whole and finds

that the record provides substantial support for the ALJ's conclusions.  Consequently, the

court concludes there was sufficient medical evidence before the ALJ from which she

properly could made a residual functional capacity assessment.

Holloman also challenges the ALJ's determination that she could perform light work

because the ALJ found that she could "perform the standing/walking requirement of 6 hours

out of an 8 hour working day." According to Holloman, this does not fall within the

definition of light work.  (Doc. # 12, Pl's Br. at 10).  Holloman is simply mistaken about the

ALJ's determination.  In her RFC, the ALJ specifically limited Holloman to "stand/walk no

more than 2 hours (total) during an 8 hour workday." (R. 21).  Consequently, this argument

---

[4]  This Ruling clarifies the policy of the Social Security Administration on the evaluation of
symptoms in the adjudication of claims for disability benefits under title II and title XVI of the Social
Security Act.

[5]  This Ruling clarifies when the evaluation of symptoms, including pain, requires a finding about
the credibility of an individual and explains the factors to be considered in assessing the credibility of the
individual's statements about symptoms.

[6]  Generally, these Rulings describe how the Commissioner evaluates and uses medical source
opinions.

fails.

Holloman accuses the ALJ of speculating on her physical abilities, and contends that the ALJ should have secured a consultative evaluation.   The court disagrees.   An administrative law judge is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the administrative law judge to render a decision.   *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988).   The regulations do not require the Commissioner to secure a consultative evaluation, nor do they create a right to a consultative examination.   Holloman is seeking disability benefits for a closed period between 2003 and 2006.   A consultative examination at this juncture would offer little to the determination of Holloman's physical condition over six years ago.

Lastly, Holloman attempts to improperly shift to the Commissioner the burden of establishing the evidentiary basis from which her residual functional capacity may be determined.   In the fourth step of the sequential analysis, the ALJ determines the claimant's RFC and her ability to return to her past relevant work.   *Phillips*, 357 F.3d at 1238.   While the ALJ has the responsibility to make a determination of plaintiff's RFC, it is plaintiff who bears the burden of proving her RFC, i.e., she must establish through evidence that her impairments result in functional limitations and that she was "disabled" under the Social Security Act.   *See* 20 C.F.R. § 404.1512 (instructing claimant that the ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled").   *See also Pearsall v. Massanari,* 274 F.3d

1211, 1217 (8th Cir. 2001) (it is claimant's burden to prove RFC, and ALJ's responsibility to determine RFC based on medical records, observations of treating physicians and others, and claimant's description of limitations).  Thus, the ALJ was not required to secure a medical source opinion about Holloman's residual functional capacity.

In support of her position, Holloman relies on a case from another district for the proposition that the Commissioner's fifth-step burden must be supported by a residual functional capacity assessment of a physician.  *See* Doc. 14 at 7 (an ALJ cannot rely on the opinion of a non-examining physician as evidence of the claimant's RFC but "must be supported by the residual functional capacity assessment of a treating physician or examining physician." citing *Coleman v. Barnhart*, 264 F.Supp.2d 1007, 1010 (S.D. Ala. 2003)).

But *Coleman* is most assuredly not the last word on this issue.  In *Packer v. Astrue*, ___ F.3d ___, 2013 WL 593497 (S.D. Ala. February 14, 2013), Chief Judge Granade rejected the absolutism of *Coleman*, noting that "numerous court had upheld ALJ's RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."  *Id.* at *3.  Like those other courts, this court rejects *Coleman's* seemingly mandatory requirement that the Commissioner's fifth-step burden must be supported by an RFC assessment of a physician.[7]  The ALJ had before her sufficient medical evidence from which she could make a reasoned determination of Holloman's residual functional capacity.  Thus, she was not required to secure from a medical source a residual

---

[7]  The court notes with dismay that the plaintiff failed to cite for the court the many cases which disagree with *Coleman v. Barnhart*, 264 F.Supp.2d 1007, 1010 (S.D. Ala. 2003).  Counsel is reminded of his obligation of candor to the court.

functional capacity assessment.

**B. Treating Physician's Opinion**.  Holloman also argues that the ALJ failed to properly evaluate the opinion of her treating physician, Dr. James Lockwood.  (Doc. # 12, Pl's Br. at 11-14).  According to the plaintiff, the ALJ erred by failing to "give great weight" to Dr. Lockwood's opinion.  (*Id*. at 12).

Of course, the law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis*, 125 F.3d at 1440 (citing 20 CFR § 404.1527 (d)(2)).  The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-62.

However, there are limited circumstances when the ALJ can disregard the treating physician's opinion.  The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence

supports a contrary finding.  *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  Good

cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the

doctor's medical records, or unsupported by objective medical evidence.  *See Jones v. Dep't.*

*of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*,

937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987).

The weight afforded to a physician's conclusory statements depends upon the extent to which

they are supported by clinical or laboratory findings and are consistent with other evidence

of the claimant's impairment.  *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).

The ALJ "may reject the opinion of any physician when the evidence supports a contrary

conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).  The ALJ must

articulate the weight given to a treating physician's opinion and must articulate any reasons

for discounting the opinion.  *Schnorr*, 816 F.2d at 581.

On May 12, 2009, Dr. Lockwood wrote a letter on Holloman's behalf in which he

opined that she had been disabled since October 2001.  (R. 196).  According to Dr.

Lockwood, Holloman

> had extensive difficulties which lead to excessive absenteeism and became
> unable to work at this time.  Her evaluation included a CT scan of the
> lumbosacral spine in November 2000 which revealed a bulging disc at L3-4
> with degenerative changes at L3-4, L4-5, and L5-S1.  Subsequent EMG and
> nerve conduction studies revealed evidence of anoxal nerve loss neuropathy
> to the feet with a right posterior tibial nerve deficit.  She was then seen by Dr.
> Hank Moll and was found to have evidence of a compression fracture of L1
> with associated degenerative changes. . . .
>
> In summary, it is my opinion that Ms. Holloman became completely and totally
> disabled effective October 2001 when she lost her job.

(R. 196).

On April 21, 2010, Dr. Lockwood completed a clinical assessment of pain form (R. 200) and physical capacities evaluation. (R. 201). Dr. Lockwood assessed Holloman's pain at a level that would cause her distraction, and her pain would be "[g]reatly increased" by physical activity. (R. 200). He opined that Holloman could sit for 2 hours and stand or walk for only 1 hour. (R. 201).

After reviewing the medical evidence, the ALJ gave Dr. Lockwood's opinion "moderate weight" because "the evidence as a whole indicates the claimant was limited in her ability to perform basis work activities, but not as limited as Dr. Lockwood suggests." (R. 25).

> [Dr. Lockwood's] opinion was developed upon an examination of the claimant and after a review of her medical records. However, this opinion is not well supported by the doctor's treatment notes and is not consistent with the medical evidence as a whole. As discussed above, the claimant's treatment modality was conservative and she rarely complained of the pain described by Dr. Lockwood. The claimant was never noted to complain of the extreme limitations suggested by Dr. Lockwood. This opinion is also inconsistent with the other evidence contained in the medical evidence of record.

(R. 24). After a thorough review of Holloman's treatment records, the ALJ discounted Dr. Lockwood's opinion. Her decision to give Dr. Lockwood's opinion moderate weight is supported by substantial evidence. None of the medical records or tests to which Dr. Lockwood refers in his May 2009 letter are included in the medical record. Although the period of disability at issue began in 2003 and ended in 2006, Dr. Lockwood's medical opinion of Holloman's disability is dated 2009. His opinion that she was disabled beginning

in 2001 is contrary to Holloman's opinion about her date of disability; Holloman alleges she became disabled in October 2003.  Dr. Lockwood also suggests that Holloman left her job in 2001 because she was disabled even though, in her disability report, Holloman stated that she stopped working in 2001 "due to non health reasons."  (R. 138).

More importantly, however, Dr. Lockwood's own treating records contradict his assessment of the severity of Holloman's impairments.  For example, Dr. Lockwood suggests that Holloman has been disabled since October 2001.  There are no treatment notes from 2001 or earlier.  The first treatment note is dated September 30, 2002 in which Holloman complains of a "flare in back pain and shoulder pain."  (R. 254).  Holloman attributes her pain to stress.  (*Id.*).  Holloman complained of a migraine headache on October 14, 2002, (*id*) but did not complain of pain again until February 27, 2003.  (R. 252).  At that time she indicated that she developed a migraine because of "continued stress because of marital problems."  (*Id.*)  On June 30, 2003, Holloman reported to Dr. Lockwood that she was doing "fairly well."  (R. 249).

On November 3, 2003, Holloman presented to Dr. Lockwood complaining of headaches and sinus problems.  (R. 247).  Dr. Lockwood diagnosed her with allergies.  (*Id.*)  On November 20, 2003, Holloman reported that she fell in the Piggly Wiggly grocery store.  (*Id.*)

On March 3, 2004, Holloman "report[ed] that she is doing reasonably well given the circumstances of the last 3 months."  (R. 246).  Holloman complained of an increase in headaches which she attributed to stress.  (*Id.*)  On July 21, 2004, Holloman complained of

14

arthritic pain in her feet and wrists as well as menopausal symptoms. (R. 244). She made no other complaints.

Holloman did not see Dr. Lockwood again until February 24, 2005 when she complained of bronchitis. She complained again of bronchitis and sinusitis in April and July 2005. (R. 181). Despite Dr. Lockwood's urging, Holloman continued to smoke.

On August 10, 2005, Holloman complained of muscle pain and soreness from "increased activity, as she helps her son learn to swim." (R. 179).

On January 4, 2006, Holloman reported that she was "actually doing fairly well overall. She did have a minor flare with her back and reports that her symptoms finally resolved with a combination of Fioricet and Flexeril." (R. 178). Dr. Lockwood noted "[s]he is otherwise doing relatively well." (*Id*.) On June 6, 2006, Holloman indicated that she was "doing better with her [headaches]" and she "denie[d] any increase in arthralgras." (R. 177).

On November 6, 2006, one month prior to the expiration of her insured status, Dr. Lockwood noted that Holloman "is doing fairly well." (R. 183).

After the expiration of her insured status, in May 2007, Holloman was home schooling her son who was diagnosed as autistic. (R. 175). Although she was under stress, she was "asymptomatic of any problems with [headaches.]" (*Id*.) She reported "otherwise feeling well." (*Id*.) In November 2007, Holloman inquired about smoking cessation because she was fatigued and had shortness of breath. (R. 174). She had no other complaints at that time. (*Id*.) In August 2008, Dr. Lockwood noted that Holloman was "doing fairly well overall," and she was caring for her two grandchildren ages 4 and 2. (R. 171).

A thorough review of Dr. Lockwood's treatment notes demonstrate that his notes do not support the level of disability he attributes to Holloman.  The  ALJ may disregard the opinion of a physician, provided that he states with particularity reasons therefor.  *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987).  The ALJ examined and evaluated the treatment records for evidence supporting Dr. Lockwood's assessment of Holloman's ability to work, and she considered Holloman's own testimony.   Only then did the ALJ discount Dr. Lockwood's opinion that Holloman was disabled.  Based upon its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ properly rejected Dr. Lockwood's opinion regarding Holloman's limitations.

To the extent that Holloman is arguing that the ALJ should have accepted Dr. Lockwood's opinion in determining her residual functional capacity, for the reasons already stated, the ALJ properly discounted the opinion of Dr. Lockwood.  Consequently, the ALJ was not required to give great weight to his RFC assessment.

Pursuant to the substantial evidence standard, this court's review is a limited one; the entire record must be scrutinized to determine the reasonableness of the ALJ's factual findings.  *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).  The ALJ evaluated all the evidence before her which led her to conclude that the plaintiff can perform light work.  It is not the province of this court to reweigh evidence, make credibility determinations, or substitute its judgment for that of the ALJ.  Instead the court reviews the record to determine if the decision reached is supported by substantial evidence.  *Moore v. Barnhart*, 405 F.3d 108, 1211 (11th Cir. 2005).  Substantial evidence "is less than a preponderance, but rather

such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Given this standard of review, the court concludes that the ALJ's residual functional capacity is consistent with the medical evidence as a whole as well as Hoffman's testimony about her impairments and abilities. In short, after a careful examination of the administrative record, the court concludes that substantial evidence supports the conclusion of the ALJ concerning Hoffman's residual functional capacity to perform light work.

## V.  Conclusion

For the foregoing reasons, the court concludes that the decision of the Commissioner is due to be affirmed.  A separate final judgment will be entered.

Done this 13th day of June, 2013.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE